UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOSHUA HOWARD,

        Plaintiff,

v.                                                    Case No. 14-C-1464

JOYCE MEYER MINISTRIES, et al.,

        Defendant.

## DECISION AND ORDER

On November 20, 2014, plaintiff Joshua Howard filed an action under 42 U.S.C. § 1983, alleging that his civil rights were violated. A previously assigned judge screened the original complaint on June 1, 2015 and allowed Howard to proceed on claims under the First and Fourteenth Amendments. ECF No. 12 at 4–5. The case was reassigned to Magistrate Judge Joseph on consent of the parties to magistrate judge jurisdiction. On January 28, 2016, Judge Joseph denied Joyce Meyer Ministries' motion to dismiss. ECF No. 31.

Howard filed a second amended complaint on May 18, 2016, which is the operative complaint in this action. ECF No. 37. The complaint identified the Doe defendants named in the original complaint and added new claims. The second amended complaint alleges that the defendants displayed a religious drawing in the library, instituted a religious-based gift bag giveaway, and programmed a television channel to a Christian-based radio station, all in violation of the Establishment Clause of the First Amendment. ECF No. 37 at 2–5, 8–9. It also alleges that the defendants did not allow the plaintiff to possess a Buddha emblem necklace, in violation of the First Amendment's Free Exercise Clause, the Fourteenth Amendment's Equal Protection Clause, and the

Religious Land Use and Institutionalized Persons Act (RLUIPA). *Id.* at 6–8. On June 14, 2016, the case was reassigned to the previous judge because the new defendants did not consent to magistrate judge jurisdiction. This case was subsequently reassigned to me. This matter is now before the court to address the defendants' motions for summary judgment. For the following reasons, the motion for summary judgment will be granted as to each of the defendants on all of Howard's claims.

## PRELIMINARY MATTERS

Before turning to the merits of the case, the court will address various motions filed by the defendants. On September 29, 2016, defendants Joyce Meyer Ministries (JMM) and JMM employees Kathleen Lormis, Roy Lormis, and Adolph Rodriguez (collectively, the JMM Defendants) filed two separate motions for summary judgment. ECF Nos. 51, 54. On October 21, 2016, defendants Eric George, Michael Meisner, Francis Paliekara, William Pollard, Donald Strahota, Nevin Webster, and Daniel Westfield (the State Defendants) filed a motion for summary judgment. ECF No. 59. Howard filed two motions for an extension of time to respond to the defendants' motions for summary judgment, which were both granted by the court. The latter order extended Howard's time to respond until February 17, 2017. ECF No. 80 at 3.

On February 22, 2017, the JMM Defendants filed motions to deem their proposed undisputed statement of facts admitted and rule on their motions for summary judgment. ECF No. 83–84. These defendants base their motions on Howard's failure to respond to their summary judgment motions. To date, Howard has not filed a response to the JMM Defendants' motions for summary judgment. Howard's failure to respond renders the JMM Defendants' proposed facts undisputed for the purpose of summary judgment *See* Civil L.R. 56(b)(4) (E.D. Wis.). The court will therefore

2

grant their motion to deem their proposed facts admitted and decide their unopposed motions for summary judgment.

On February 22, 2017, the State Defendants filed a motion to dismiss for failure to prosecute. ECF No. 82. They contend that the court should dismiss this case with prejudice and enter judgment in their favor based on Howard's failure to timely respond to their motion for summary judgment. *Id.* at 2. The State Defendants cite to the fact that Howard had over ninety days to file his response, and that the Scheduling Order contains a warning that "failure to make a timely submission or otherwise comply with the court's orders may result in the dismissal of this action for failure to prosecute." *Id.*

Howard did not respond to the motion to dismiss. However, on February 28, 2017, he filed a brief in opposition to the State Defendants' motion for summary judgment, proposed findings of fact, and a declaration with attached exhibits. ECF Nos. 85–87. On March 6, 2017, Howard filed a response to the State Defendants' proposed findings of facts. ECF No. 88. The State Defendants subsequently filed a motion to strike Howard's untimely summary judgment response on March 14, 2017. ECF No. 89. They contend that the court should strike Howard's response because he did not move for a third extension of time to file his submissions prior to the court's deadline, they were submitted ten and fourteen days after they were due, and Howard has not established good cause or excusable neglect to justify the delay. *Id.* at 1.

Howard filed an unsworn response to the State Defendants' motion to strike. ECF No. 96. He states that on February 17, 2017, the date his summary judgment response was due, he placed his response in the institution mailbox to be forwarded to the library for e-filing. *Id.* According to Howard, three days later, he came across his objections to the State Defendants' proposed findings

3

of fact and, realizing he had not sent the objections in with his response on February 17, 2017, he placed it in the institutional mailbox along with a letter explaining why it was untimely. *Id.*

As an initial matter, the court will not dismiss this case for failure to prosecute. Dismissal is a harsh sanction and would have required an explicit warning prior to the dismissal. *See Ball v. City of Chicago*, 2 F.3d 752, 755 (7th Cir. 1993). The court did not give Howard an explicit warning and, therefore, dismissal as a sanction is not warranted. In addition, the court has discretion to extend the time permitted for responding, whether the extension is sought before or after the actual termination of the allotted time. *See* Fed. R. Civ. P. 6(b)(1); *see also* 4B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1165 (4th Ed. 2015). "When an act may or must be done within a specified time, the court may, for good cause, extend the time: . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). Presumably, Howard did not file a motion for the court to accept his February 28, 2017 response because he thought it was timely based on his statement that he placed it in the prison mailbox on February 17, 2017. And Howard knew that his objections were untimely and filed a cover letter explaining the tardiness.

The court prefers to address the parties' claims on the merits and allowing Howard's response will not prejudice the State Defendants. Accordingly, the court will deny the State Defendants' motions to dismiss for failure to prosecute and to strike Howard's summary judgment response. The court will now turn to the merits of the defendants' motions for summary judgment.

## BACKGROUND

Howard is incarcerated at the Waupun Correctional Institution. Howard's claims against the defendants can be summarized as follows: (1) First Amendment Establishment Clause claim against

4

Librarian Webster related to a religious drawing by Webster's child that was posted on the bulletin board in the library; (2) First Amendment Establishment Clause and conspiracy claims against Westfield, Meisner, Strahota, JMM, Rodriquez, R. Lormis, and K. Lormis based on the gift bag giveaway; (3) First Amendment Establishment Clause claim against Strahota and Pollard for programming the institution's informational television channel to play Christian-based radio broadcasts in the background; (4) First Amendment Free Exercise Clause, Fourteenth Amendment Equal Protection Clause, and RLUIPA claims against Chaplains George and Paliekara for not permitting Howard to possess a Buddha emblem necklace; and (5) an official capacity claim against Warden Pollard for implementing a custom and practice of promoting Christianity.

**A. Religious Drawing**

Defendant Webster is a librarian at Waupun. State Defs.' Proposed Findings of Fact (DPFOF) ¶ 8, ECF No. 61. His workspace is located in the main library, with a pillar abutting the right side of his desk. *Id.* ¶¶ 10–11. Webster's desk has a main platform where he can work from a seated position, with a high shelf-type platform at about eye level when he is sitting. *Id.* ¶ 10. If an inmate approaches Webster's desk when he is sitting, the inmate must look over the higher platform. *Id.* On the pillar to Webster's right is a small bulletin board with documents for Webster's use, such as a calendar and a notary policy. *Id.* ¶ 12. The documents on the small bulletin board are posted there primarily for Webster's reference and are not meant for inmates' use. *Id.* On two other sides of the pillar facing away from the desk are documents and memoranda for inmates' use. *Id.* ¶ 13.

On the small bulletin board, Webster had a colored picture of a nativity scene drawn by one of his apparently school-aged children. *Id.* ¶ 16. Webster did not display the drawing for inmates'

5

use, and he did not intend to promote any religion by displaying it. *Id.* ¶ 17. The drawing had been posted on the pillar next to Webster's desk for at least two years before it was brought to his attention that it needed to be removed. *Id.* ¶ 14.

The parties dispute the level of visibility inmates had of items placed on the small bulletin board, and specifically the religious drawing. According to the State Defendants, inmates cannot easily view the documents posted there. *Id.* ¶ 12. They assert that Webster hung the drawing below the bulletin board on the side of the pillar directly facing his desk, and that the drawing was below the line of sight of the shelf platform which sits along the front of the desk. *Id.* ¶ 15. The defendants acknowledge that an inmate could have seen the drawing if he tried to look over the shelf unit to see the papers on or near Webster's desk. *Id.* ¶ 17. Howard, on the other hand, avers that anyone standing in the public area surrounding the pillar and desk could plainly view the religious drawing. Pl.'s Proposed Findings of Fact (PPFOF) ¶ 5, ECF No. 86.

Howard has been incarcerated at Waupun since 2002. *Id.* ¶ 1. He is a frequent visitor to the library but he only saw the drawing on one occasion in 2009. DPFOF ¶¶ 18–20. Upon seeing the drawing, Howard filed an inmate complaint. PPFOF ¶ 6. The institution complaint examiner instructed Howard to raise the issue with Webster's supervisor, and Howard replied that he wished to maintain the confidentiality of the inmate complaint review system. *Id.* ¶ 7. The examiner recommended dismissal of the complaint because Howard did not contact the supervisor, and Deputy Warden Meisner dismissed the complaint. *Id.* After dismissing the complaint, Meisner approached Webster privately, informed him that an inmate had complained about the religious drawing, and instructed him to remove it. *Id.* ¶ 8. Webster immediately complied with the instruction. DPFOF ¶ 19. He had not received any complaints about the drawing until Howard filed his complaint. *Id.* Howard suffered no damage from viewing the drawing one time. *Id.* ¶¶ 20, 25.

6

**B. JMM Gift Bag Giveaway**

In April 2010, JMM, a non-profit Christian outreach organization located in Fenton, Missouri, contacted former DOC Secretary Raemisch to offer free gift bags containing a bar of soap, a clear plastic bottle of shampoo, and a practical inspirational paperback book written by Joyce Meyer, to inmates in DOC institutions. *Id.* ¶ 89; JMM Proposed Findings of Fact (JJM PFOF) ¶¶ 3–8, ECF No. 53; Lormis et al. Proposed Findings of Fact (LPFOF) ¶¶ 3–8, ECF No. 56. Waupun and other correctional institutions occasionally accept donations from organizations. DPFOF ¶ 86. Higher-level management usually discuss these donations to determine the institution's need for the donation and its appropriateness for the safety and security of the institution. *Id.* Donations that are approved and accepted by the institution are generally available to all inmates, without taking into consideration an inmate's religion or creed. *Id.* ¶ 88. The donor's religious affiliation (or non-affiliation) does not factor in to deciding whether to accept a charitable contribution. *Id.* ¶ 89.

An executive leadership team approved JMM's donation of gift bags. *Id.* ¶ 94. None of the defendants were on the leadership team. *Id.* Although Defendant Westfield was invited to the meeting to discuss security concerns, he had no involvement in the decision to accept the donations. *Id.* ¶ 95. Westfield, who was the Security Chief for the Division of Adult Institutions, advised the executive team that there would not be security concerns with the items contained in the bags. *Id.* ¶¶ 4, 96. He did not know of inmates' religious preferences and he did not take into account JMM's religious affiliation. *Id.*

Each individual institution implemented a plan for distributing the bags. Some institutions had staff deliver the bags while others allowed JMM representatives to enter the institution and assist with the handout. *Id.* ¶ 104. Due to Waupun's status as a maximum security institution, former

7

Warden Thurmer, defendant Meisner, and defendant Strahota decided the institution would accept the bags from JMM and have staff distribute them to inmates in general population. *Id.* ¶ 105. In June and July of 2010, memoranda informing the inmates of the availability of the forthcoming gift bags were posted on Waupun's institution channel, placed in the cell hall binders, placed in the daily bulletin provided to inmates, and posted in the library. *Id.* ¶ 107. The memoranda stated:

> In mid-August, Joyce Meyer Ministries will be providing all inmates with free hygiene gift bags. These gift bags will consist of a clear plastic bag containing a 1.5 oz. bar of soap, a 4 oz. clear plastic bottle of shampoo, and a practical paperback inspirational book written by Joyce Meyer. These will be available in some foreign languages as well. Gift bags are optional for inmates to take if they would like one. Bags will be distributed in cell halls to inmates that would like to receive one.

*Id.* ¶ 108.

The parties dispute whether Howard was in general population status or segregation status during this time period. According to the State Defendants, Howard was housed in general population during the entirety of this period and would have had the same exposure to the memoranda as other general population inmates. *Id.* ¶ 109. According to Howard, he did not transfer from segregation status to general population status until July 28, 2010, which is the day he says the gift bag giveaway took place. PPFOF ¶ 30.

The parties also dispute the date on which the JMM gift bag giveaway took place and who distributed the gift bags. According to the JMM Defendants, on August 8, 2010, R. Lromis and Rodriguez departed from the St. Louis area in a twenty-six-foot Ryder truck containing almost 12,000 hygiene gift bags for delivery at various Wisconsin prisons and returned to St. Louis on August 19, 2010, after delivering the gift bags to the institutions. LPFOF ¶¶ 17–18, 21. On August 16, 2010, they delivered 1,281 hygiene gift bags to Waupun's warehouse facility. *Id.* ¶ 19; DPFOF

8

¶ 111. The giveaway was scheduled for Saturday, August 21, 2010. DPFOF ¶ 112. JMM representatives were not present for the giveaway, nor were defendants Strahotoa, Meisner, or Pollard (who was warden at another institution at the time). *Id.* ¶¶ 2, 90, 113, 118. None of the State Defendants had any involvement in handing out the bags. *Id.* Neither R. Lormis, Rodriquez, nor any other JMM representative entered Waupun to distribute the hygiene gift bags. LPFOF ¶¶ 19, 23.

According to Howard, the gift bag giveaway took place on July 28, 2010, the day he transferred from segregation to general population. PPFOF ¶ 30. He states that after getting settled in his new cell, his door opened and he followed his neighbors downstairs. *Id.* Howard saw an officer with a clipboard who appeared to be checking off the inmates' names, and he motioned Howard to the left where a procession of inmates were walking alongside some tables manned by civilians. *Id.* ¶ 31. Howard got in line as instructed and when it was his turn, a "civilian," with a Hand of Hope shirt on, handed him a JMM gift bag and said, "God bless you." *Id.* ¶¶ 31–32. Howard filed a complaint on August 3, 2010, and on August 10, 2010, the complaint was rejected upon finding that it did not state a significant issue considering that "the bags were available for every general population inmate" regardless of religious preference and that no inmates were forced to take a bag. *Id.* ¶ 33. It is undisputed that when offered the bag, Howard asked no questions and did not reject the bag. DPFOF ¶ 117.

**C. Institution Channel**

Howard's religious programing claim relates to his exposure to Christian radio broadcasting played in the background on the informational television channel the institution operates throughout the day. The institution channel is one of nineteen channels inmates are able to watch on their

9

personal televisions. *Id.* ¶ 70. Waupun has an institutional television channel which circulates through a slide show of various memoranda and announcements concerning the institution. *Id.* ¶ 69. The video of the institution channel consists of over 100 different screen slides which alternate every ten seconds, covering topics such as general announcements, monthly menu, inmate news and notices, job openings, and updated or new policies and procedures. PPFOF ¶ 11. The audio for the institution channel is programmed by administrative staff to whichever AM or FM radio station the last person set it at. *Id.*; Pollard Decl. ¶ 9. Inmates may also obtain at least some of the information presented on the institution television channel in the library, but library time is limited. PPFOF ¶12.

Howard alleges that on two occasions—in June 2011 and in September 2014—he tuned into the institution channel and found Christian music or sermons playing in the background. *Id.* ¶ 75. He heard the music or sermon for only seconds on one occasion and for less than five minutes on the other, after which Howard changed the channel or turned the television off. *Id.* ¶¶ 75–76. Although Howard claimed that the audio for the institution channel was tuned to a Christian radio station for almost a week in June of 2011, the State Defendants argue this contradicts his sworn deposition testimony that described only one incident in June 2011 when he listened for less than five minutes. PPFOF ¶ 13; Spitz Decl., Ex. 1014 109:4–10, ECF No. 66-1 at 12. In fact, the Offender Complaint Howard filed over the issue stated the channel was tuned to the Christian station from June 24 to June 29 of 2011, which is consistent with his declaration. Pusich Decl. Ex. 5, ECF No. 65-5 at 7.

In any event, after the June 2011 instance, Howard filed complaint WCI-2011-12871, stating that the institution violated the Establishment Clause by programming the audio to a religious station. PPFOF ¶ 14. The institution complaint examiner recommended that the complaint be rejected

because the complaint did not raise a significant issue. In the examiner's view, there was no religious establishment issue because the inmate could change the channel or turn off the television if he does not like what is on. *Id.* ¶ 15. Defendant Pollard agreed and rejected the complaint. *Id.* After the September 2014 instance, Howard filed complaint WCI-2014-17691, and the examiner recommended that the complaint be rejected because Howard's prior complaint, WCI-2011-12871, addressed the issue. *Id.* ¶ 17. Donald Strahota, acting as Warden Pollard's designee, agreed and rejected the complaint. *Id.* Waupun does not have a policy forbidding staff from playing religious programming as audio background for the institution's informational channel. *Id.* ¶ 18.

**D. Buddha Emblem Necklace**

Inmates of Wisconsin prisons may exercise their religious beliefs and practices in several ways, including the wearing of religious property, such as emblems. DPFOF ¶ 28. The DOC operates under an umbrella religious group (URG) structure, recognizing the following URGS: Catholic, Eastern Religions, Humanist/Athiest/Agnostic, Islam, Jewish, Native American, Pagan, and Protestant. *Id.* ¶ 29. The DOC selected the groups to appeal to a wide range of religious beliefs, and the DOC encourages inmates to designate their religious preference with the URG that most closely resembles their religious practice needs. *Id.* An inmate may change his religious preference as often as once every six months. *Id.* ¶ 30. The designation determines which services or studies the inmate may attend and which religious property and dietary accommodations he may obtain. *Id.* ¶ 31. Pursuant to DOC policy, inmates may possess approved religious property items associated with their designated religious preference and may not possess or purchase religious items not associated with their designated religious preference (except for literature). *Id.* ¶¶ 32–33. An inmate may wear a religious emblem appropriate to his designated religious preference. *Id.* ¶ 34.

11

If an inmate wants a new religious practice or property item that is not accommodated in policies, he may submit a DOC-2075 Request for New Religious Practice Form. *Id.* ¶ 35. Completing this form allows staff members with specialized knowledge, experience, and expertise at the institution and the division levels an opportunity to review the request, consider options for accommodation, and consult with religious advisors and security personnel about the request. *Id.* ¶ 37. Howard has not submitted any DOC-2075 requests at Waupun. *Id.* ¶ 67. If Howard had religious beliefs requiring him to possess a Buddha emblem while maintaining his religious preference as part of the Pagan group, he could have filled out the form seeking an accommodation. *Id.* ¶ 68.

On February 13, 2012, Howard designated his religious preference as Pagan. *Id.* ¶ 40. Therefore, he would have been allowed one emblem corresponding with the Pagan group, such as a Pentagram or Thor's Hammer. *Id.* ¶ 41. Howard alleges that on May 28, 2014, Chaplain George did not permit him to possess a Buddha emblem. *Id.* ¶ 47. Chaplain George, who was in charge of the Pagan URG, does not recall having a conversation with Howard about a Buddha emblem on May 28, 2014. *Id.* ¶ 44. If Chaplain spoke with Howard about receiving a Buddha emblem while his religious preference was designated Pagan, he would have told Howard that the Buddha emblem was not allowable property for the Pagan URG. *Id.* ¶ 45. The Buddha emblem was only approved for inmates identifying with the Eastern Religions URG. *Id.* ¶ 47. Chaplain Paliekara would not have told Chaplain George or Howard that the DOC did not recognize a Buddha image as a religious symbol for Buddhists, because that is not true. *Id.* ¶ 48.

Howard subsequently changed his religious preference to Eastern Religions on May 29, 2014. *Id.* ¶ 43. However, Howard has not put in any order for a Buddha emblem (or any emblem) since changing his preference. *Id.* ¶¶ 62, 64. Howard identifies no substantial burden on the practice of his religion from the denial of the emblem other than being denied the emblem. *Id.* ¶ 63.

12

**LEGAL STANDARD**

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party has the burden of showing there are no facts to support the nonmoving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "Material" means that the factual dispute must be outcome-determinative under the law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997). A "genuine" issue must have specific and sufficient evidence that, were a jury to believe it, would support a verdict in the non-moving party's favor. Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotation marks omitted).

**ANALYSIS**

**I. State Defendants' Motion for Summary Judgment**

The State Defendants contend that defendants Pollard, Meisner, Strahota, Westfield, and Paliekara lacked sufficient personal involvement to be held liable for a constitutional tort. They also contend that Howard cannot prevail on any of his claims under the RLUIPA, Free Exercise Clause

13

of the First Amendment, and Equal Protection Clause of the Fourteenth Amendment, pertaining to the denial of the Buddha emblem. The State Defendants contend that Howard cannot prevail on his Establishment Clause claims based on the gift bag giveaway, the drawing in the library, and the television channel.

**A. Buddha Emblem Necklace**

Howard did not address the State Defendants' arguments that the court should grant them summary judgment on the RLUIPA, free exercise, and equal protection claims based on his allegations that Chaplains George and Paliekara did not allow him to have a Buddha emblem necklace. When a party fails to respond to a motion for summary judgment, its failure "constitutes an admission . . . that there are no disputed issues of genuine fact warranting a trial." *Flynn v. Sandahl*, 58 F.3d 283, 288 (7th Cir. 1995). But it does not constitute a waiver by the non-moving party of all legal arguments based upon those undisputed facts. *Id.* (citation omitted). In other words, the court must still determine whether the undisputed facts show that the court should grant the State Defendants' motion for summary judgment. *See id.*

The wearing of religious objects appears to be an exception to the DOC's otherwise strict rules against inmates wearing jewelry and necklaces. *See Sasnett v. Sullivan*, 91 F.3d 1018 (7th Cir. 1996), *vacated by Sullivan v. Sasnett*, 521 U.S. 1114 (1997). The exception is mandated by the RLUIPA, 42 U.S.C. § 2000cc-1(a), the very law upon which Howard bases his claim that the defendants refused to allow him a necklace with a Buddha emblem. *Kramer v. Wis. Dept. of Corr.*, No. 10-cv-224-slc, 2011 WL 13187095 (W.D. Wis. July 26, 2011). It is apparently in order to comply with RLUIPA that the DOC adopted its detailed policy on religious property.

14

The undisputed facts establish that on February 13, 2012, Howard listed his religious preference as part of the Pagan URG. When he requested the Buddha emblem on May 28, 2014, his religious preference was still listed as Pagan. Howard alleges that Chaplain George denied his request for the Buddha emblem necklace and informed him that he had listed his religious preference as Pagan. The following day, Howard submitted a form changing his religious preference to the Eastern Religions URG, under which he could possess the Buddha necklace. However, Howard never renewed his request for the necklace. If Howard had wanted to possess the Buddha necklace while maintaining his Pagan URG, he could have completed a DOC-2075 form seeking an accommodation. Paliekara Decl. Ex. 1007, DAI Policy 309.61.02, ECF No. 64-3 at 5. It is undisputed that he never submitted this form to the DOC.

RLUIPA prohibits the government from imposing a substantial burden on the religious exercise of a person residing in or confined to an institution unless the burden furthers a compelling governmental interest through the least restrictive means. *Cutter v. Wilkinson*, 544 U.S. 709, 715 (2005). "[T]he plaintiff bears the initial burden of showing (1) that he seeks to engage in an exercise of religion, and (2) that the challenged practice substantially burdens that exercise of religion." *Koger v. Bryan*, 523 F.3d 789, 796 (7th Cir. 2008). Once a plaintiff has established that *prima facie* case, the burden shifts to the defendant, who must show that its practice is the least restrictive way of furthering a compelling governmental interest. *Id.*

Howard has failed to make any showing as to how, if at all, denying him the Buddha emblem while he was claiming to be Pagan substantially burdened his exercise of religion. All he had to do in order to be allowed possession of the Buddha emblem was to change his designation, which he did the next day, or submit a DOC-2075 requesting approval of a religious property item not listed

15

for his designation. Neither constitutes a substantial burden. Indeed, the failure to seek relief by submitting a DOC-2075 constitutes a failure to exhaust administrative remedies, which bars the claim altogether. *Schlemm v. Frank*, No. 11-cv-272-wmc, 2014 WL 2591879, at * 7–9 (W.D. Wis. June 10, 2014), *affirmed in part and reversed in part*, *Schlemm v. Wall*, 784 F.3d 362 (7th Cir. 2016).

Howard's free exercise claim based on the same conduct fails for essentially the same reasons. He failed to exhaust his administrative remedies by seeking a DOC-2075 request for an accommodation, and there was no showing of any burden on the exercise of his religion. *See Hernandez v. Comm'n of Internal Revenue*, 490 U.S. 680, 699 (1989) (holding that "[t]he free exercise inquiry asks whether government has placed a substantial burden on the observation of a central religious belief or practice and, if so, whether a compelling governmental interest justifies the burden"). And his Equal Protection claim, to the extent it is developed, fails because the policy is neutral with respect to religions and a rational basis exists to justify the general rule against jewelry and necklaces. *See Locke v. Davey*, 540 U.S. 712, 720 n.3 (2004) (holding that, where the challenged government action did not constitute a "violation of the Free Exercise Clause," only "rational-basis scrutiny" was warranted). The State Defendants' motion for summary judgment as to Howard's claim based on his Buddha emblem necklace allegations will therefore be granted.

**B. Drawing in Library**

Howard's remaining claims fall under the Establishment Clause of the First Amendment. The First Amendment prohibits the government from making any law "respecting an establishment of religion." U.S. Const. Amend. I. "[A] government policy or practice violates the Establishment Clause if (1) it has no secular purpose, (2) its primary effect advances or inhibits religion, or (3) it fosters an excessive entanglement with religion." *Vision Church v. Vill. of Long Grove*, 468 F.3d

975, 991 (7th Cir. 2006) (citing *Lemon v. Kurtzman*, 403 U.S. 602, 612–13 (1971)). "'The Establishment Clause also prohibits the government from favoring one religion over another without a legitimate secular reason." *Id.* at 992 (quoting *Kaufman v. McCaughtry*, 419 F.3d 678, 682 (7th Cir. 2005)).

In his response to the State Defendants' motion, Howard contends that an objective, reasonable observer seeing Webster's religious drawing posted on the pillar in plain view and surrounded by official notices with no personal effects in sight would perceive it as Waupun endorsing Christianity. He also contends that the manner in which staff handled his complaint raises the inference that the drawing was displayed in accordance with Waupun's official practice of promoting Christianity.

The undisputed facts show that in 2009, Howard, who was a frequent visitor to the library, noticed the religious drawing that Webster had posted along with other items not meant for inmates' use on the bulletin board facing his desk. Howard saw the drawing one time, he complained about it, and Webster removed it. Regardless of the visibility of the drawing to inmates, the court cannot conclude that Webster's placement of his child's drawing violated Howard's constitutional rights. The response to Howard's complaint shows that Waupun staff took his complaint seriously, directing Webster to remove the drawing. Howard has not identified an unconstitutional policy based on these allegations and he has not shown that the one-time exposure to the religious drawing violated his constitutional rights. Therefore, the court will grant the State Defendants' motion for summary judgment on this claim.

**C. Institutional Channel**

Howard contends that Waupun's failure to implement a rule which would require the audio to remain non-secular and the Warden's "repeated rejections" of his complaints as not raising a

significant issue, support his claim that Waupun has a practice of promoting religion. It is undisputed that in June 2011 and September 2014, Howard turned the institution channel on to find a Christian radio station playing in the background. In each instance, he listened to the radio station for not more than one to five minutes, and then he turned off his television or changed the channel. No suggestion is offered as to why he could not have simply turned down the volume. Howard concedes that, while watching the institution television channel is the most convenient way to get institution information and announcements, inmates can get most of the information in other ways, including the library.

In addition, Howard has not identified a policy of promoting Christianity based on his allegations that on two occasions in over three years he encountered a Christian radio station when he turned to the institution television channel. It appears that someone on the administrative staff turned the radio to a Christian radio station as audio background on the institution station on two occasions in which Howard tuned in. This is not enough to amount to establishment of religion.

Nevertheless, the warden would do well to adopt a policy forbidding staff from playing a Christian or religious radio station as background audio for the institution's informational station so as to avoid any problems in the future. The Supreme Court has repeatedly made clear that "at a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which 'establishes a [state] religion or religious faith, or tends to do so.'" *Lee v. Weisman*, 505 U.S. 577, 587 (1992) (quoting *Lynch v. Donnelly*, 465 U.S. 668, 678 (1984)). Inmates should not be forced to listen to religious programming as a condition of getting information over the institution's television channel. While the warden may not have directed the playing of a Christian radio station, his failure to take any

18

action in the face of a complaint would render him personally liable if the religious programming continued. Based on the facts of this case, involving only two brief episodes that appeared to have randomly occurred and were easily avoided, however, I conclude that no First Amendment violation has been shown. Accordingly, the State Defendants' motion for summary judgment as to this claim will also be granted.

**D. Gift Bag Giveaway**

Howard contends that the religious giveaway by JMM representatives violated the Establishment Clause. Yet, he has not submitted evidence that Waupun treated the JMM donation differently than other donations based on its status as a Christian-affiliated group. He does not dispute the process by which DOC administrators approve donations, the fact that all donations are available to inmates regardless of their religious affiliation, or that religious affiliation is not taken into account when considering whether to accept donations. It is also undisputed that there was a secular reason for the giveaway—many inmates have little or no source of income to purchase hygiene items such as those offered. Howard has not shown that Waupun singled out a particular religion for special treatment without a secular reason for doing so. Based on the foregoing, Howard's Establishment Clause claim fails. *See Goodvine v. Swiekatowski*, 594 F. Supp. 2d 1049, 1058 (W.D. Wis. 2009) (citing *Cruz v. Beto*, 405 U.S. 319 (1972); *Kaufman*, 419 F.3d at 683–84).

**II. JMM and K. Lormis, R. Lormis, and Rodriguez's Motions**

Howard did not file any response to the JMM Defendants' motions for summary judgment. The motions and supporting materials establish that L. Lormis, K. Lormis, and Rodriquez had no personal involvement in the gift bag giveaway at Waupun because they did not participate in the giveaway. They simply offered the gifts to the prisons and followed the DOC officials' directions

19

in delivering them to Waupun. They never set foot inside the prison themselves. Just as importantly, Howard has offered no evidence to show that they were state actors within the meaning of § 1983 or that they acted in concert with state actors to violate his rights. In addition, JJM is not liable because Howard has not provided evidence that JMM has an unconstitutional corporate policy or custom. *See Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 789, 796 (7th Cir. 2014). Therefore, the court will grant these defendants' motions for summary judgment.

## CONCLUSION

For the foregoing reasons, the defendants' motions for summary judgment (ECF Nos. 51, 54, 59) are **GRANTED**. The State Defendants' motions to dismiss for failure to prosecute (ECF No. 82) and to strike Howard's untimely response to summary judgment (ECF No. 89) are **DENIED**. JMM's and K. Lormis, R. Lormis, and Rodriguez's motions to deem proposed undisputed statement of fact admitted and rule on motions for summary judgment (ECF Nos. 83, 84) are **GRANTED**. The Clerk is directed to enter judgment dismissing this case with prejudice.

Dated this   18th   day of December, 2017.

                                             s/ William C. Griesbach
                                             William C. Griesbach, Chief Judge
                                             United States District Court